IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FINANCIAL CASUALTY & SURETY, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-0360 |
| | § | |
| KATHERINE PARKER, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This case arises from the bail-bond business.  The plaintiff, Financial Casualty and Surety,

sued Katherine Parker and Bella's Bail Bonds in state court.  Parker and Bella's removed, (Docket

Entry No. 1), and FCS dropped its claims against Bella's, (Docket Entry No. 22).  FCS has moved

for summary judgment against Parker.  (Docket Entry No. 37).  Parker responded, and FCS replied.

(Docket Entry Nos. 50, 51).

Based on the pleadings; the record; the motion, response, and reply; and the applicable law,

the court grants the motion for summary judgment in part and denies it in part.  Summary judgment

is granted on FCS's motion to require Parker to pay FCS $5,514.13 for unpaid premiums and

$24,750 for forfeiture judgments on bonds Bella's issued under the parties' contract.  Summary

judgment is denied on certain parts of FCS's request for payment because the current record is

inadequate to determine the amount due.  The court also grants summary judgment on FCS's right

to recover reasonable attorney's fees under its contract with Bella's, but finds that the information

FCS provided in its fee application does not permit a decision on the amount.

Because the record is inadequate to resolve all the issues necessary to determine damages,

1

as well as fees, this court orders FCS to file a supplemental fee application by June 15, 2015, as well as a supplement to the summary judgment motion addressing the specific issues as to which summary judgment is not granted.  Parker may respond by June 29.  The court cancels the joint pretrial order deadline and the docket call setting for June 26, 2015, pending the ruling on the remaining issues.  The joint pretrial order filing deadline and date for docket call will be reset, if appropriate, after the remaining issues are resolved.

 The reasons for these rulings are explained below.

## I.     Background

Parker operated Bella's as a bail-bond sub-producer working under a general agent, Bail Group Management LLC ("BGM").  In June 2008, Parker signed a Sub-Producer Bail Bond Agreement with FCS, BGM, Genevieve Steward, and James Marcola.  (Docket Entry No. 37, Ex. A-1).  The Agreement authorized Bella's to issue bail bonds in New Jersey with FCS as the surety, and required Parker to pay FCS and BGM a premium for each bond, calculated as a percentage of the bond's value.  (*Id.* at ¶ 5; Docket Entry No. 37, Ex. B, Parker Depo. at p. 55).  The Agreement also required Parker to pay any forfeiture judgments entered against FCS for bail bonds that Bella's wrote.

FCS alleges that Parker breached the Sub-Producer Bail Bond Agreement when she did not pay FCS or BGM premiums for some of the bail bonds Bella's issued under the Agreement and also failed to pay some of the forfeiture judgments entered on bonds Bella's issued.  (Parker Depo. at pp. 62–69; Docket Entry No. 37, Ex. C; Ex. A, Padilla Affidavit).  FCS paid the judgments for those forfeited bonds.  (*Id.*).  FCS seeks damages for Parker's failure to pay FCS premiums for the bail bonds Bella's issued and as indemnification for the forfeited bonds Bella's issued, as well as

attorney's fees and pre- and postjudgment interest.  Because Parker represented herself for a time

(she now has counsel), and because threshold issues had to be resolved, the court allowed an

extended period for discovery.  FCS filed this summary judgment motion, and, after discovery,

Parker responded.

## II.      The Motion for Summary Judgment

### A.      The Applicable Legal Standard

"Summary judgment is required when 'the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Trent v. Wade*,

776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material

fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving

party.'"  *Nola Spice Designs, LLC v. Haydel Enterprises, Inc.*, — F.3d —, 2015 WL 1600689, at

*2 (5th Cir. Apr. 8, 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).  "The

moving party 'bears the initial responsibility of informing the district court of the basis for its

motion, and identifying those portions of [the record] which it believes demonstrate the absence of

a genuine issue of material fact.'"  *Id.* at *2 (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694

(5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to

the absence of evidence and thereby shift to the non-movant the burden of demonstrating by

competent summary judgment proof that there is an issue of material fact warranting trial."  *Id.*

(quotations omitted); *see also Celotex*, 477 U.S. at 325.  Although the party moving for summary

judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate

the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir.

2005).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response."  *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'"  *Nola Spice*, 2015 WL 1600689, at *2 (quoting *EEOC*, 773 F.3d at 694).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 2015 WL 1600689, at *2.

### B.   Analysis

#### 1.   Whether Certain Matters Are Deemed Admitted

FCS argues that it is entitled to have requests for admission it sent Parker in February 2014 deemed admitted as part of the basis for its summary judgment motion.  FCS claims that Parker did not respond to those requests and that they are conclusively established.  Federal Rule of Civil

Procedure 36(a)(3) requires a written answer or objection to a request for admission within 30 days after the request is served unless the parties agree on, or the court orders, an extended period to respond. *See* FED. R. CIV. P. 36(a)(3). A failure to file timely responses deems the requests established. *Id.*; *Am. Auto. Ass'n v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir.1991); 8B FEDERAL PRACTICE & PROCEDURE § 2262.

FCS served Parker with requests for admission on February 24, 2014. (Docket Entry No. 37, Ex. D). FCS claims that Parker did not respond. In her declaration, Parker claims that she sent responses to FCS's counsel. (Docket Entry No. 50, Ex. A, Parker Declaration at ¶ 29). Parker's declaration does not establish that she timely responded to the requests for admission. She has not submitted a copy of her responses or any evidence of service, by mail or other means. In her declaration, Parker states only that she responded, not when, and she does not state how or when she sent responses to counsel. There is no basis to conclude that she responded within the deadline. (*Id.*). Parker's failure to object or answer the requests for admission within the deadline, or to move for additional time, means that the requests are deemed admitted. *See* FED. R. CIV. P. 36(a)(3); 8B FEDERAL PRACTICE & PROCEDURE § 2259; *see also, e.g.*, *In re Carney*, 258 F.3d at 418–19 (explaining that because a party failed to respond to requests for admission within the Rule 36 time period, those requests were deemed admitted).

"[A] deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b)." *Covarrubias v. Five Unknown INS/Border Patrol Agents*, 192 F. App'x 247, 248 (5th Cir. 2006) (quoting *In re Carney*, 258 F.3d at 419). Parker has not filed a Rule 36(b) motion to withdraw the admissions. *See also id.* (the district court did not abuse its discretion in denying a motion to withdraw deemed admissions that was filed almost one year after responses were due,

even though the responses to the requests for admission were filed only nine days late); *Cottrell v. Career Inst. Inc.*, 1 F.3d 1237, at *1 (5th Cir. 1993) (unpublished) (holding that district court did not err in basing summary judgment on *pro se* plaintiff's deemed admissions and noting that "a district court is not free to amend or withdraw Rule 36 admissions *sua sponte*").

Deemed admissions "can lead to a grant of summary judgment against the non-responding party." *Murrell v. Casterline*, 307 F. App'x 778, 780 (5th Cir. 2008) (citing *Dukes v. South Carolina Ins. Co.*, 770 F.2d 545, 548–49 (5th Cir. 1985)). "Since Rule 36 admissions, whether express or by default, are conclusive as to the matters admitted, they cannot be overcome at the summary judg[]ment stage by contradictory affidavit testimony or other evidence in the summary judgment record." *In re Carney*, 258 F.3d at 420; *see also United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) (affirming a district court's decision to deem matters admitted and grant summary judgment based on those admissions when the nonmovant defendant failed to respond to requests for admission and never moved to withdraw the deemed admissions, even though the defendant, on appeal, gave multiple reasons for his failure to respond). The deemed admissions are considered, along with the other record evidence, in ruling on FCS's summary judgment motion.

### 2. Whether Parker Paid FCS the Bond Premiums Due Under the Agreement

FCS claims that Parker failed to pay premiums for 16 bonds, that she was required to pay FCS 2.5% of each bond's value, and that the total amount of premium owed is $5,514.13.

Addendum B to the Agreement states:

> Unless otherwise authorized and/or directed by Company, and without regard to premium credit extended to customers, Sub-Producer shall remit to Company and/or General Agent within 14 days of execution of each bond hereunder such cash sums for

> premiums as will equal to 2.5 % ($25.00 per $1,000.00) of the total
> amount of Bond Liability for each bond written by Sub-Producer.
> Company shall charge a minimum of $20.00 per bond issued.

(Docket Entry No. 37, Ex. A-1 at p. 13) (emphasis omitted).

Parker argues that the parties orally agreed to change the premium amount to 2% after the Agreement was signed, and that FCS was only to receive 1.1% of each bail surety bond posted, with BGM retaining the other 0.9%. (Docket Entry No. 50 at p. 5). Parker states in her declaration that "the 2.5% which [she] was to pay to Bail Group Management, LLC was modified to 2% by agreement of the Parties, and all payments [she] provided pursuant to the contract reflected this 2% agreement." (Parker Declaration at ¶ 5). Michael Padilla, FCS's vice-president, testified in his affidavit that "Parker was obligated to remit a 2% premium on each bond issued. Of this 2%, the BGM Defendants retained a portion as Parker's general agent, and the remainder was to be remitted to FCS. Under the BGM Defendants' agreement with FCS, the BGM Defendants initially retained 1% of the premium from Parker. On January 1, 2009, this amount was increased to 1.1%." (Padilla Affidavit at ¶ 6).

FCS contends that evidence of a subsequent oral modification is inadmissible under the statute of frauds. The Texas statute of frauds requires surety agreements to be in writing. *See* TEX. BUS. & COM. CODE § 26.01(b)(2) (providing that "a promise by one person to answer for the debt . . . of another person" falls within the statute of frauds); *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 642 (Tex. 2013), *reh'g denied* (Mar. 21, 2014). If a contract is subject to the statute of frauds, an oral modification is enforceable only if it does not materially alter the parties' contractual obligations. *See Triton Commercial Properties, Ltd. v. Norwest Bank Texas, N.A.*, 1 S.W.3d 814, 818 (Tex. App.—Corpus Christi 1999, pet. denied) (citing *King v. Texacally Joint Venture*, 690 S.W.2d 618,

7

619 (Tex. App.—Austin 1985, writ ref'd n.r.e.)).  "Where the character or value of the underlying agreement is unaltered, oral modifications are enforceable." *Am. Garment Properties, Inc. v. CB Richard Ellis-El Paso, L.L.C.*, 155 S.W.3d 431, 437 (Tex. App.—El Paso 2004, no pet.); *see also Horner v. Bourland*, 724 F.2d 1142, 1148 (5th Cir. 1984).  Texas courts enforce oral modifications to extend a contract's term or the time to perform, *see Dracopoulas v. Rachal*, 411 S.W.2d 719, 721 (Tex. 1967), but an oral agreement to modify the amount owed is not enforceable if the contract is subject to the statute of frauds. *See Montalvo v. Bank of Am. Corp.*, 864 F. Supp. 2d 567, 582 (W.D. Tex. 2012) (*citing Horner*, 724 F.2d at 1148).

The oral modification of the premium amount Parker owed under the Sub-Producer Bail Bond Agreement is unenforceable.  Under the written Agreement, Parker was required to pay FCS or BGM 2.5% of each bond's value as a premium.

Parker also disputes which premiums were not paid.  Parker admits that she "most probably [did] not pa[y]" premiums for 15 of the 16 bonds FCS claims are unpaid.  (Docket Entry No. 50 at p. 5).  But she argues that she paid a $3,000 premium on bond FCS250-526104 to Genevieve Steward.  (*Id.*; Parker Declaration ¶ 12).  Parker states in her declaration that she paid Steward $3,000 for that bond's premium, which would reduce the amount of unpaid bond premiums to $2,514.13.  But Parker has not submitted evidence showing payment, and her deemed admissions conclusively establish that the amount of unpaid premiums for bonds she issued is $5,514.13. (Docket Entry No. 37, Ex. D, Request for Admission No. 28).  Summary judgment is granted that Parker owes FCS $5,514.13 in unpaid bond premiums.

### 3. Forfeiture Judgments

FCS claims that it paid $43,250 in bond forfeiture judgments for seven bonds Parker issued.

(Docket Entry No. 37, Ex. A; Ex. A-3).  Parker admits that she owes FCS $16,750 for the forfeitures of bonds FCS10-510813, FCS25-500654, FCS5-624738, FCS5-603096, and FCS5-658104.  She disputes that she owes any amount based on the forfeiture of the other two bonds, asserting that the statute of limitations bars the claim on one bond and that FCS erroneously calculated the credits and expenses on both.

FCS argues that Parker cannot introduce evidence or argue that she does not owe FCS $43,250 for bond-forfeiture judgments because she testified at her deposition that "she was unaware of any evidence refuting the $43,250 she owed to FCS."  (Docket Entry No. 51, p. 8).  During her deposition, Parker testified that she had no evidence "that would prove that instead of FCS paying [certain] bond forfeiture judgments[,] [she] paid the bond forfeiture judgments."  (Docket Entry No. 37, Ex. B at p. 83).  Parker did not testify that she knew of no other defenses to FCS's claims.  Neither the deemed admissions nor Parker's deposition testimony precludes her arguments based on the statute of limitations or on FCS's improper calculation of credits or expenses.

Parker argues that FCS's claim for indemnification under bail surety bond FCS25-370699 is time-barred.  That bond was posted on behalf of Felton Lingo on May 11, 2009, and was forfeited by the Superior Court of New Jersey, Cumberland County, on October 21, 2009.  (Docket Entry No. 37, Ex. A-3).  FCS paid the forfeiture judgment on March 2, 2011.  (*Id.*).  The statute of limitations on a breach-of-contract claim is four years from the date the claim accrues.  TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3).  "In the case of a promise to indemnify against liability, a cause of action accrues to the indemnitee only when the liability has become fixed and certain, as by rendition of a judgment."  *Krueger Eng'g & Mfg. Co. v. Admiral Truck Servs., Ltd.*, No. 14-01-00035-CV, 2002 WL 576083, at *8 (Tex. App.—Houston [14th Dist.] Apr. 18, 2002, no pet.) (citing *Tubb v. Bartlett*,

862 S.W.2d 740, 750 (Tex. App.—El Paso 1993, writ denied); *Holland v. Fidelity & Deposit Co. of Md.*, 623 S.W.2d 469, 470 (Tex. App.—Corpus Christi 1981, no writ)). FCS responds that its liability became fixed, and its cause of action accrued, when the forfeiture judgment was entered. (Docket Entry No. 37, Ex. A-3). FCS claims that judgment was entered on March 2, 2011.

The record shows the date FCS paid the forfeiture judgment, March 2, 2011. But the record but does not show when the forfeiture judgment was entered. (*Id.*). The record is inadequate to determine when FCS's claim based on the forfeiture of bond FCS25-370699 accrued and whether the claim was timely asserted. FCS is not entitled to summary judgment as to the forfeiture of this bond.

Parker also argues that FCS failed to credit all of the amounts it recovered from the county and the state for forfeited bond FCS10-462464, and, even if FCS's claim is not time-barred, for bond FCS25-370699. (Docket Entry No. 50 at p. 7). FCS deducted $1,875 from bond FCS25-370699 and $1,000 from bond FCS10-462464 for remissions it received from the county and state. (Docket Entry No. 37, Ex. A-3). The spreadsheet FCS submitted appears to indicate that the county and state each paid $1,000 for bond FCS10-462464 and $1,875 for bond FCS25-370699, yet FCS only deducted one payment. (*Id.*). Parker claims that, based on the spreadsheet, the state and county each contributed the amounts shown, and the credit amount should be doubled. The issue is whether FCS received the credits shown from both the county and the state or only one of them. The present record is inadequate to permit the court to grant summary judgment resolving that issue.

Parker also challenges $4,500 FCS claims as fees for work its attorney performed relating to bond FCS10-462464. Parker asserts that she hired her own attorney, whose work led to the remission FCS received. Both Parker's declaration and FCS's affidavit state that each party's own

attorney obtained the remission.  Neither party has submitted supporting evidence to resolve which attorney, if either, performed the necessary work.  The record does not permit the court to find, as a matter of law, that FCS is owed $4,500 for work its attorney performed seeking remission on this forfeited bond.

FCS is entitled to summary judgment that it is owed $16,750 for the forfeiture of bonds FCS10-510813, FCS25-500654, FCS5-624738, FCS5-603096, and FCS5-658104.  FCS is also entitled to summary judgment that it is owed $8,000, the amount FCS seeks less $1,000 that remains in dispute and less $4,500 in attorney's fees, for the forfeiture of bond FCS10-462464; this is the amount that Parker admits she is liable to pay.  Summary judgment is denied to the extent FCS seeks a ruling that it is entitled to receive an additional $5,500 for the forfeiture of this bond.  Summary judgment is also denied as to FCS's claims based on the forfeiture of bond FCS25-370699 because the record does not permit the court to resolve the statute of limitations issue.  No later than June 15, 2015, FCS must file a supplemental summary judgment motion with supporting materials addressing these specific issues.  Parker will have until June 29 to respond.

## III.    Attorney's Fees

### A.    The Legal Standard for Fee Awards

Texas law governed the substantive issues in this case and applies to the fee application as well.  *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  Texas law allows a party to recover attorney's fees when a statute or contract provides.  *In re Velazquez*, 660 F.3d 893, 895–96 (5th Cir. 2011); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006).  Paragraph 30 of the Sub-Producer Bail Bond Agreement states: "Should any litigation arise between the parties hereto related to this Agreement, the prevailing party shall be entitled to recover reasonable

attorney's fees and other costs in addition to any other relief granted." (Docket Entry No. 37, Ex. A-1 at p. 9).

Texas courts generally use the lodestar method for calculating attorney's fees. *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc*., 180 S.W.3d 761, 782 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.); *see also Guity v. C.C.I. Enter*., 54 S.W.3d 526, 528 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("In determining the reasonableness of attorney's fees, the fact finder must be guided by a specific standard. This standard is substantially similar under both federal law and state law."). The first lodestar step is to determine the reasonable hourly rate for the attorneys and nonlegal personnel who worked on the case. The reasonable hourly rate is based on "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The second step is to determine the number of hours "reasonably expended." *McClain v. Lufkin Indus., Inc*., 519 F.3d 264, 284 (5th Cir. 2008).

After the court completes both steps, it multiplies the hours "reasonably expended" by the reasonable hourly rates to determine the lodestar figure. *Id.* The court then decides whether to increase or decrease the amount based on the factors set out in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). The twelve *Johnson* factors are (1) the time and labor involved, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to this case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of counsel, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 717–19. Texas courts weigh similar factors under Rule 1.04 of the Texas Disciplinary

12

Rules of Professional Conduct to determine reasonable fees.  *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Brazos Elec. Power Co-op., Inc. v. Weber*, 238 S.W.3d 582, 585–87 (Tex. App.—Dallas 2007, no pet.).

### B.     The Fee Application

FCS argues that it is entitled to $53,464.69 in attorney's fees for work that included "stud[ying] the claim file, proupound[ing] written discovery, participat[ing] in the Court's scheduling conference, attend[ing] multiple discovery conferences, respond[ing] to Parker's attempt to transfer this case, attend[ing] the deposition of Parker in New Jersey and prepar[ing] and prosecut[ing] the attached summary judgment motion." (Docket Entry No. 37, Ex. E at p. 2).  FCS also argues that FCS's counsel, Irelan McDaniel PLLC, "needed additional attorneys and paralegals to complete the drafting of documents, research legal issues, and assist in the management of this lawsuit." (*Id.*).

FCS's lead counsel, Brad Irelan, submitted an affidavit in support of FCS's fee application. (*Id.*).  Irelan states that the application is based on an hourly rate of $240 for partners, $205 for associates, and $135 for paralegals. (*Id.*).  FCS has not submitted a list of attorneys or other legal staff who worked on the case, information about each attorney's experience and expertise, the total number of hours billed on the case for which FCS seeks a fee award, or a summary or chart showing the hours each lawyer who worked on the case expended and what tasks they performed.  *See Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (per curiam) (noting that the documentation of attorney's fees must allow the court to determine the reasonable award amount).

Information on the hours the individual lawyers and legal assistants spent on the case, and

for what purpose, is necessary for this court to conduct a meaningful review of the time spent and to determine whether the number of hours included in the fee award was reasonable, in order to calculate a lodestar amount.  The information FCS provided does not allow a meaningful review or fee determination.  *See Rappaport v. State Farm Lloyds*, 275 F.3d 1079, at *3 (5th Cir. 2001) (unpublished) ("The fee applicant bears the burden of proof in showing the reasonableness of the hours applied for: It must provide documentation that will enable the district court to verify this showing, and a district court may reduce the number of hours awarded if the documentation is vague or incomplete.").

The record shows that as a matter of law, FCS is entitled to reasonable attorney's fees.  The record also shows no basis to dispute the reasonableness of the hourly rates FCS has identified.  The amount cannot be determined, however, based on the information in the present record.  FCS may submit a supplemental fee application no later than June 15, 2015.  The supplemental application must include the lawyers who worked on this case and a brief description of their experience, a summary of the hours each lawyer working on this case spent for which fees are sought, the number of hours and amount of fees sought for each lawyer, and the total hours and fees sought.  The supplemental application must also summarize the time that two or more lawyers spent working on the same task or service and the dates and types of those services.

## IV.    Conclusion

The court grants FCS's motion for summary judgment, (Docket Entry No. 37), in part, and awards FCS $5,514.13 for unpaid premiums on bonds Bella's issued and $24,750 for forfeiture judgments on bonds Bella's issued.  FCS is entitled to prejudgment interest on all amounts awarded from November 21, 2013, as well as postjudgment interest.  The court denies summary judgment

14

on FCS's claim based on the forfeiture of bond FCS25-370699 and on the amount of deductions and expenses FCS is entitled to claim for the forfeiture of bond FCS10-462464.  FCS is entitled to attorney's fees, but the amount cannot be determined on the present record.  FCS may file a supplemented fee application no later than June 15, 2015.  FCS must also file a supplement to the summary judgment motion addressing the specific issues as to which summary judgment is not granted.  Parker may respond to both by June 29.  The court cancels the joint pretrial order deadline and the docket call setting for June 26, 2015, pending the ruling on the remaining issues.  The joint pretrial order filing deadline and date for docket call will be reset, if appropriate, after the remaining issues are resolved.

SIGNED on June 1, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge