United States District Court
Southern District of Texas
**ENTERED**
November 02, 2015
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| FINANCIAL CASUALTY & SURETY, INC., § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-14-0360 |
| § | |
| KATHERINE PARKER, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND OPINION**

The plaintiff, Financial Casualty & Surety, Inc. ("FCS"), sued Katherine Parker in state court for breach of contract. Parker removed, and FCS moved for summary judgment. The court granted in part and denied in part FCS's motion, (Docket Entry No. 53), and ordered FCS to file a supplement to its summary-judgment motion and the fee application, which it did. Parker responded, and FCS replied. (Docket Entry Nos. 54–56). Based on the pleadings; the supplemental motion, response, and reply; and the applicable law, the court grants FCS's motion for summary judgment and awards FCS $42,582 in attorney's fees. Final judgment is entered by separate order. The reasons are explained below.

**I.     Whether FCS's Claim for Indemnification Under the Lingo Bond Is Time-Barred**

Parker argues that FCS's claim for indemnification under bail surety bond FCS25-370699 (the "Lingo bond") is time-barred. Parker has the burden of proof on the affirmative defense of limitations. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

The Lingo bond was posted on May 11, 2009, and forfeited by the Superior Court of New Jersey, Cumberland County, on October 21, 2009. (Docket Entry No. 37, Ex. A-3). FCS paid the

forfeiture judgment on March 2, 2011. (*Id.*). The statute of limitations on a breach-of-contract claim is four years from the date the claim accrues. TEX. CIV. PRAC. & REM. CODE § 16.004(a)(3). "In the case of a promise to indemnify against liability, a cause of action accrues to the indemnitee only when the liability has become fixed and certain, as by rendition of a judgment." *Krueger Eng'g & Mfg. Co. v. Admiral Truck Servs., Ltd.*, No. 14-01-00035-CV, 2002 WL 576083, at *8 (Tex. App.—Houston [14th Dist.] Apr. 18, 2002, no pet.) (citing *Tubb v. Bartlett*, 862 S.W.2d 740, 750 (Tex. App.—El Paso 1993, writ denied); *Holland v. Fidelity & Deposit Co. of Md.*, 623 S.W.2d 469, 470 (Tex. App.—Corpus Christi 1981, no writ)). The court ordered supplemental briefing on this issue because the record showed that FCS paid the forfeiture judgment on March 2, 2011, but it did not show when the forfeiture judgment was entered. (Docket Entry No. 37, Ex. A-3).

Neither side has produced the forfeiture judgment. FCS asserts that it does not have that document in its records. (Docket Entry No. 54 at p. 2). FCS has instead submitted an affidavit from its senior vice-president, Robert Sabo, stating that "[n]o bond forfeiture judgment was entered at the time the bond forfeited" and that "[i]t is not unusual in New Jersey for bond forfeiture judgments to be entered months, if not years, after the original forfeiture." (Docket Entry No. 54, Ex. B at p. 2). FCS has also submitted an April 15, 2011 order directing the State of New Jersey and Cumberland County to pay FCS $3,750. (Docket Entry No. 54, Ex. C at p. 3). FCS argues that this is the date its liability became fixed and its cause of action accrued, because "[u]ntil the remission process was completed, FCS could not know the amount of its fixed liability on the Lingo bond forfeiture." (Docket Entry No. 54 at p. 2).

Citing New Jersey case law, Parker responds that FCS's liability became fixed on October 21, 2009, when the bond was forfeited. (Docket Entry No. 55 at p. 4–5). The parties' contract has a choice-of-law clause specifying that "the Agreement is to be interpreted in accordance with the

laws of the State of Texas." (Docket Entry No. 37, Ex. A-1 at ¶ 28). Although New Jersey law sets out the procedures regulating the forfeiture of the Lingo bond, Texas law governs when FCS's claim accrued. Parker's use of New Jersey case law to interpret the Texas statute of limitations is misplaced. (Docket Entry No. 55 at p. 4).

Under Texas law, liability generally becomes "fixed and certain" by rendition of a judgment. *See, e.g.*, *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999). When the bond was forfeited on October 21, 2009, FCS's liability was not "fixed and certain." When a court declares a bond forfeited, it has not rendered a "judgment." Rather, it has rendered a judgment nisi, "an interlocutory, conditional judgment." *Int'l Fidelity Ins. Co. v. State*, 71 S.W.3d 894, 896 (Tex. App.—Texarkana 2002, no pet.); *see also Safety Nat'l Cas. Corp. v. State*, 273 S.W.3d 157, 163 (Tex. Crim. App. 2008) ("A judgment nisi is a provisional judgment that is not final or absolute, but *may* become final." (emphasis added)). "In effect a judgment nisi serves as documentary evidence of a fact the State must prove to obtain a favorable judgment in a bond forfeiture case . . . : that the principal did in fact fail to appear in accordance with his bond." *State v. Sellers*, 790 S.W.2d 316, 321 (Tex. Crim. App. 1990) (en banc). "Although a judicial declaration of forfeiture, a judgment nisi alone authorizes no recovery by the State." *Id.*

Even if the forfeiture order did not fix FCS's liability, Parker contends, New Jersey law made liability certain 75 days later. The New Jersey Rules of Court provide that

> [u]pon breach of a condition of a recognizance, the court on its own motion shall order forfeiture of the bail, and the finance division manager shall forthwith send notice of the forfeiture, by ordinary mail, to county counsel, the defendant, and any surety or insurer, bail agent or agency whose names appear on the bail recognizance. . . . The notice shall direct that judgment will be entered as to any outstanding bail absent a written objection seeking to set aside the forfeiture, which must be filed within 75 days of the date of the notice. . . . The court shall not enter judgment until the merits of any objection are determined either on the papers filed or, if the court so orders for good cause, at a hearing. In the absence of objection, judgment shall be entered as provided in paragraph (c), but the court may thereafter remit it, in

3

whole or part, in the interest of justice.

N.J. R. § 3:26-6(a).  Rule 3:26-6(c), in turn, specifies that

> In the absence of a motion, when a forfeiture is not set aside or satisfied, the court shall, upon expiration of the 75 days provided for in paragraph (a), summarily enter a judgment of default for any outstanding bail and execution may issue thereon. After entry of such judgment, the court may remit it in whole or in part in the interest of justice.

*Id.* § 3:26-6(c).  Parker argues that these provisions undercut the Sabo affidavit assertion that bond forfeiture judgments may be entered months, if not years, after the original forfeiture.  Accepting Parker's argument means that, under New Jersey Rule of Court 3:26-6(c), the Lingo forfeiture judgment would have been entered on January 4, 2010, 75 days after the forfeiture order.  If this is when FCS's claim accrued, as Parker argues, then the four-year statute of limitations does not bar the claim because FCS sued on November 21, 2013.  (Docket Entry No. 1, Ex. 2).

The record does not show a fact dispute about whether FCS's claim is time-barred.  FCS is entitled to summary judgment in its favor on the forfeiture of the Lingo bond.

## II.  Whether FCS Correctly Calculated the Amount of Parker's Liability on the Pancoast, Lingo, and Harold Bonds

The court ordered supplemental briefing on how FCS calculated the amount Parker owes on the forfeited bonds.  Parker argued that although the spreadsheet FCS submitted indicated that the County and the State each paid $1,875 on the Lingo bond and $1,000 on FCS10-462464 (the "Harold bond"), FCS credited one remission rather than two.  Parker contended that the credited amounts should have been doubled.

FCS now explains that it credited remissions from both the County and the State.  FCS credited the State remissions to each bond individually.  FCS did not credit the County remissions to the Lingo and Harold bonds because Parker, on FCS's behalf, received two remission checks from the County for those bonds, as well as for a third bond, FCS50-388289 (the "Pancoast bond").

4

(Docket Entry No. 54, Ex. E at p. 5–6).  The remissions totaled $16,875: $1,875 for the Lingo bond; $1,000 for the Harold bond; and $14,000 for the Pancoast bond.  FCS has submitted an invoice with Parker's handwriting showing that she withheld $4,750 of the $16,875 remitted.  (*Id.* at p. 2).  FCS has also submitted a $12,125 check Parker signed, representing the remission amount less the $4,750 she withheld.  (*Id.* at p. 3).[1]  FCS credited the County remissions from the Lingo and Harold bonds to the Pancoast bond, and it credited the amount Parker withheld from the County's remission checks to the cost of the Pancoast bond.[2]  Because FCS has accounted for both the State and the County remissions, the spreadsheet it has submitted accurately reflects the amount Parker owes.

Parker also disputed a $4,500 attorney's fee award that FCS allegedly withheld on the Pancoast bond.  (Docket Entry No. 50 at p. 8).  FCS's spreadsheet does not show that it withheld $4,500 from Parker.  (Docket Entry No. 54, Ex. A).  The document refers to a $4,500 *credit* to Parker on the Pancoast bond for payments FCS received from Parker's build-up fund.  (*Id.*).  Under their agreement, that fund served as Parker's collateral for paying bail-forfeiture judgments.  (Docket Entry No. 37, Ex. A-1 at ¶ 7); *see generally Comm'r of the Dep't of Banking & Ins. v. Capital Bonding Corp.*, 2006 WL 2128930, at *7 (N.J. Super. App. Div. Aug. 1, 2006) (per curiam) (unpublished) (describing the use of build-up funds in the bail-insurance industry).  Parker has not shown that her liability on the Pancoast bond is inaccurate for this reason.[3]

---

[1]  Parker does not dispute that her handwriting is on the invoice and the check.

[2]  The cost of the Pancoast bond was $35,000, plus the amount Parker withheld from the County remission, for a total of $39,750.  The remissions credited to the bond included: $14,000 from the State on the Pancoast bond; $14,000 from the County on the Pancoast bond; $1,875 from the County on the Lingo bond; $1,000 from the County on the Harold bond; and a $4,500 payment from Parker's "BUF," or "build-up fund," for a total of $35,375.  (Docket Entry No. 54, Ex. A).

[3]  Parker objects that the documents attached to FCS's supplement to its summary-judgment motion are hearsay.  She has not asserted a factual or legal basis for this argument.  It is waived.  Even if it is not waived, the documents relied on for purposes of summary judgment are not hearsay or fall within an exception to the hearsay rule.

The June 1, 2015 Memorandum and Order awarded FCS $24,750 of the $43,250 FCS sought for forfeiture judgments.  The court grants FCS's motion for summary judgment on the remaining claims and awards FCS the remaining $18,500.

## III.   Attorney's Fees

### A.     The Legal Standard for Fee Awards

Texas law governed the substantive issues in this case and applies to the fee application as well.  *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).  Texas law allows a party to recover attorney's fees when a statute or contract provides.  *In re Velazquez*, 660 F.3d 893, 895–96 (5th Cir. 2011) (per curiam); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006).  Paragraph 30 of the contract states: "Should any litigation arise between the parties hereto related to this Agreement, the prevailing party shall be entitled to recover reasonable attorney's fees and other costs in addition to any other relief granted."  (Docket Entry No. 37, Ex. A-1 at ¶ 30).

Texas courts generally use the lodestar method for calculating attorney's fees.  *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 782 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.); *see also Guity v. C.C.I. Enter.*, 54 S.W.3d 526, 528 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("In determining the reasonableness of attorney's fees, the fact finder must be guided by a specific standard.  This standard is substantially similar under both federal law and state law.").  The first lodestar step is to determine the reasonable hourly rate for the attorneys and nonlegal personnel who worked on the case.  The reasonable hourly rate is based on "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  The second step is to determine the number of hours "reasonably expended."  *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008).

After the court completes both steps, it multiplies the hours "reasonably expended" by the

reasonable hourly rates to determine the lodestar figure. *Id.* The court then decides whether to increase or decrease the amount based on the factors in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). The twelve *Johnson* factors are (1) the time and labor involved, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to this case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of counsel, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* at 717–19. Texas courts weigh similar factors under Rule 1.04 of the Texas Disciplinary Rules of Professional Conduct. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Brazos Elec. Power Coop., Inc. v. Weber*, 238 S.W.3d 582, 585–87 (Tex. App.—Dallas 2007, no pet.).

### B.     The Supplemental Fee Application

FCS argued that it was entitled to $53,464.69 in attorney's fees. FCS's lead counsel, Bradford Irelan, submitted an affidavit in support of the fee application. Because the information FCS provided did not allow for meaningful review, the court ordered FCS to submit a supplemental fee application. The supplemental application includes a second affidavit from Irelan, a detailed description of the attorneys and legal staff who worked on the case, and an invoice documenting the hours they expended and the tasks they performed. This additional information enables the court to analyze and determine the fee award.

#### 1.     The Lodestar Calculation

##### a.     The Hourly Rate

The first step in computing the lodestar is determining a reasonable hourly rate. The

prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  The party seeking fees bears the burden of establishing the market rate and should present the court with evidence from which the court can determine the reasonableness of the proposed rate.  *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996).

Two partners, one associate attorney, and one paralegal staffed this case.  Irelan's affidavit states that he has represented surety companies for more than 20 years, that he is familiar with the usual and customary fees charged in this type of litigation, and that the "fees are reasonable for the services performed in Houston, Texas, . . . [and] were necessary to prosecute the claims . . . ."  (Docket Entry No. 54, Ex. G at p. 2).  The affidavit states that the fee application is based on an hourly rate of $240 for partners, $205 for associates, and $135 for paralegals.[4]  (*Id.*).  Parker does not challenge the reasonableness of these rates.  The court takes judicial notice of the Texas State Bar's "Hourly Rates in 2013 Report."  This report states that the median hourly rate for attorneys litigating disputes between creditors and debtors in Texas was $216 per hour.[5]  The hourly rates submitted are consistent with prevailing market rates and are reasonable.

### b.      The Number of Hours Reasonably Expended

Irelan's affidavit summarizes the rates charged and the hours billed:

---

[4]  Irelan's supplemental affidavit states that the hourly rate for paralegals is $135, but the attached invoice uses a $130 rate.  *Compare* (Docket Entry No. 54, Ex. G at p. 2), *with* (Docket Entry No. 54, Ex. G-A at p. 6).

[5]  State Bar of Texas, Dep't of Research & Analysis, 2013 HOURLY FACT SHEET, *available at* https://www.texasbar.com/AM/Template.cfm?Section=Demographic_and_Economic_Trends&Template= /CM/ContentDisplay.cfm?ContentID=27264 (last visited Oct. 28, 2015).

| Attorney/Paralegal | Hours | Rate | Amount |
|---|---|---|---|
| Greg Howard | 112.2 | $205 | $23,001.00 |
| Crys Hymel | 30.3 | $135 | $4,090.50 |
| Blaine Hummel | 25.2 | $240 | $6,048.00 |
| Bradford Irelan | 83.7 | $240 | $20,088.00 |
| Total | | | $53,227.50 |

The record shows no basis to dispute the reasonableness of the number of hours FCS's attorneys and legal assistants worked.  The affidavit requests $53,464.69 in fees, (Docket Entry No. 54, Ex. G at p. 3), a reduction from the invoice's fees of $66,447.50, (Docket Entry No. 54, Ex. G-A at p. 45).  FCS seeks approximately $13,000 less than it invoiced.  The information provided in the affidavit results in a lodestar of $53,227.50, slightly less than the amount FCS sought in the supplemental application.  This difference is not material, but it is also not explained.  The court uses the lower lodestar amount.

### 2.    Adjustments to the Lodestar

Parker contends that the lodestar should be reduced.  She argues that the novelty and difficulty of the legal issues do not justify the award sought, *see Johnson*, 488 F.2d at 718; TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04(1), and that FCS will receive approximately 1 percent of the damages it requested in its original petition—approximately $3.9 million for its breach-of-contract claim, (Docket Entry No. 1, Ex. B at p. 17)—meaning that the award should be reduced to reflect FCS's limited success, *see* TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 1.04(4).

The court has discretion to reduce the lodestar in light of the *Johnson* factors.  *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 803 (5th Cir. 2006).  FCS received a significantly lower

damages award than it sought in its original petition. The issues in this dispute were not especially novel or complex. They involved, for example, removal, transfer of venue, and New Jersey bail-bond regulations. After considering the remaining *Johnson* factors, the court concludes that these two factors weigh in favor of reducing the fee award by 20 percent, for a total of $42,582.

**IV.     Conclusion**

The court grants FCS's motion for summary judgment, (Docket Entry No. 37), and awards FCS $18,500 in damages. FCS is entitled to prejudgment interest on the amounts awarded from November 21, 2013, as well as postjudgment interest. The court awards FCS $42,582 in attorney's fees. Final judgment is separately entered.

SIGNED on November 2, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge